**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

Mary Whitlatch,

              **Plaintiff,**             **Case No. 2:20-cv-6004**

    **v.**                      **Judge Michael H. Watson**

Belmont County, Ohio, *et al.*,      **Magistrate Judge Deavers**

             **Defendants.**

## OPINION AND ORDER

Belmont County, Ohio; Belmont County Commissioners ("Belmont County"); Belmont County Sheriff's Office; Tiffany English, RN ("English"); and Deb Butler, RN ("Butler," collectively "Defendants") move for summary judgment on Mary Whitlatch's ("Plaintiff") civil rights claims. ECF No. 27. For the following reasons, the motion is **GRANTED IN PART** and **DENIED IN PART**.

### I.     FACTS

This case arises out of the tragic death of Mr. Elzie Leasure ("Leasure"). *See generally* Compl., ECF No. 1. In 2019, Leasure was charged with attempted possession of drug abuse instruments and was placed on bond. Whitlach Dep. 21:22–23:1, ECF No. 29-3. On June 27, 2019, Leasure's bond was revoked, and he was booked into Belmont County Jail. *See id.* at 23:18–24:13.

A few days later, Leasure complained of body aches and burning in the epigastric area—the upper abdominal area just below the rib cage—and he went

to English for a medical assessment at approximately 10:45 a.m.  English Decl. ¶ 11–12, ECF No. 27-2.  Leasure told English he had gastroesophageal reflux disease ("GERD") and that he took medication for the condition.  *Id*. ¶ 13. Leasure reported that he could eat and was having normal bowel movements, and he denied vomiting.  *Id*. ¶ 13.  English checked Leasure's vital signs, which were within normal limits, and gave him an antacid to relieve his symptoms.  *Id*. ¶ 14–15.

About three hours later, Leasure returned to the medical office and again complained of epigastric pain.  *Id.* ¶ 17.  English told him that his family had brought his GERD medication and that he would get that medicine at the next medication pass (which would be in a few hours).  *Id.*  At that time, Nurse Debra Butler ("Butler") authorized Leasure's transfer to a medical cell.  Butler Decl. ¶ 27, ECF No. 27-1.  English gave Leasure his usual GERD medicine a few hours later and did not observe Leasure to be in acute distress.  English Decl. ¶ 17, ECF No. 27-2.  Similarly, Butler checked on Leasure about a half an hour later, and Leasure reported no nausea, vomiting, or bleeding.  Butler Decl. ¶ 29, ECF No. 27-1.

Twice over the next two hours, however, Leasure's roommate reported to control Leasure was vomiting blood, although it is not clear when or if Butler and

English ever learned of those reports.[1]  Resp. Exhibit F, audio recording filed manually.

At about 6:30 p.m., Leasure went to the medical office for a third time, complaining of general cramping and constipation.  English Decl. ¶ 18, ECF No. 27-2.  Butler and English examined Leasure.  *Id*. ¶ 18; Decl. ¶ 33, ECF No. 27-2.  His vital signs were normal, and his abdomen had no visual signs of abnormalities.  Butler Decl. ¶ 33, ECF No. 27-2.  Butler palpated Leasure's abdomen; it was soft and not tender.  *Id*.  Butler then gave Leasure a medication to help with constipation.  *Id*. ¶ 36.

Shortly after 8:00 p.m., English checked on Leasure before she left at the end of her shift.  English Decl. ¶ 20, ECF No. 27-2.  He did not appear distressed and was sitting upright playing cards.  *Id*.

About two hours later, though, Leasure again complained of constipation.  Butler Decl. ¶ 37, ECF No. 27-1.  Butler was still on duty, and she provided a medication to help with discomfort.  *Id*.  Between 11:00 p.m. and 3:00 a.m. the next morning, Butler checked on Leasure three times.  Butler Decl. at ¶¶ 40–42.  At the first check, Leasure was on the toilet; during the second check, he was

---

[1] Plaintiff points out that, in response to one of the roommate's calls, an unnamed staff member said, "I'll let her know."  Resp. Exhibit F, disk not on docket.  However, it is not clear who "her" is.  Further, Butler does not discuss these calls in her deposition; in her declaration, she says she did not hear the calls on July 1, 2019.  *See generally* Butler Dep., ECF No. 29-1; Butler Decl. ¶ 46, ECF No. 27-1.  English specifically states in her declaration that she did not hear the calls on July 1, 2019.  *See* English Decl. ¶ 21, ECF No. 27-2.  In her deposition, English references listening to the calls in preparation for her deposition, but does not indicate whether she had heard the calls at any prior time.  English Dep. 9:19–24, ECF No. 29-2.

sleeping; at the last check, Leasure was "restful" and did not voice any complaints. *Id.* at 42. Nurse Butler left shortly after 3:00 a.m. *Id.*

Tragically, at about 8:30 a.m., Leasure was found unresponsive in his cell and subsequently died. *Id.* ¶ 43. An autopsy determined that the cause of death was sepsis due to subacute peritonitis/serositis (which is an inflammation of a membrane that lines the abdominal wall and abdominal organs). Death Certificate, ECF No. 27-3.

## II. STANDARD OF REVIEW

The standard governing summary judgment is set forth in Federal Rule of Civil Procedure 56(a), which provides: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."

The Court must grant summary judgment if the opposing party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see also Van Gorder v. Grand Trunk W. R.R., Inc.*, 509 F.3d 265, 268 (6th Cir. 2007).

When reviewing a summary judgment motion, the Court must draw all reasonable inferences in favor of the nonmoving party, who must set forth specific facts showing there is a genuine dispute of material fact for trial, and the Court must refrain from making credibility determinations or weighing the evidence. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574,

587 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49, 255 (1986).
The Court disregards "all evidence favorable to the moving party that the jury
would not be required to believe." *Reeves v. Sanderson Plumbing Prods., Inc.*,
530 U.S. 133, 150–51 (2000). "Summary judgment will not lie if the dispute
about a material fact is genuine, that is, if the evidence is such that a reasonable
jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248
(internal citations and quotation marks omitted); *see also Barrett v. Whirlpool
Corp.*, 556 F.3d 502, 511 (6th Cir. 2009).

The Court is not "obligated to wade through and search the entire record
for some specific facts that might support the nonmoving party's claim."
*InterRoyal Corp. v. Sponseller*, 889 F.2d 108, 111 (6th Cir. 1989). The Court
may rely on the parties to call attention to the specific portions of the record that
demonstrate a genuine issue of material fact. *Wells Fargo Bank, N.A. v. LaSalle
Bank N.A.*, 643 F. Supp. 2d 1014, 1022 (S.D. Ohio 2009).

## III. ANALYSIS

Plaintiff, on behalf of herself and Leasure's estate, asserts claims under 21
U.S.C. § 1983 and under state law, all arising from Leasure's death. *See
generally* Compl., ECF No. 1. The Court addresses the federal claims before
turning to the state claims.

As an initial matter, Belmont County Sheriff's Department is not *sui juris*.
*See J.M. v. Henderson*, No. 2:09-CV-855, 2011 WL 4572007, at *2 (S.D. Ohio
Sept. 30, 2011) ("Under Ohio law, a county sheriffs department is not an entity

capable of being sued.") (internal citation omitted). Accordingly, the claims against Belmont County Sheriff's Department are **DISMISSED**.

## A. § 1983 Claims

Plaintiff brings constitutional claims under 42 U.S.C. § 1983 against English and Butler in their individual and official capacities. The Court construes the official capacity claims, as well as the claims against Belmont County Commissioners and Belmont County, as *Monell* claims against Belmont County. For the reasons discussed below, those claims fail. The Court first addresses the individual claims.

### 1. Qualified Immunity and Deliberate Indifference

English and Butler (the "Nurses") argue that they are entitled to qualified immunity for the claims against them in their individual capacities. *See, e.g.*, Mot. 9, ECF No. 27. "[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). "The central purpose of affording public officials qualified immunity from suit is to protect them from undue interference with their duties and from potentially disabling threats of liability." *Elder v. Holloway*, 510 U.S. 510, 514 (1994) (internal quotation marks and citations omitted). When reviewing a claim of qualified immunity, courts must consider a two-prong test. *See Plumhoff v. Rickard*, 572 U.S. 765, 774 (2014). For the first prong, courts consider whether

"[t]aken in the light most favorable to the party asserting the injury . . . the facts alleged show the officer's conduct violated a constitutional right." *Saucier v. Katz*, 533 U.S. 194, 201 (2001), *overruled on other grounds by Pearson v. Callahan*, 555 U.S. 223 (2009).   The other prong is "whether the right was clearly established . . . in light of the specific context of the case." *Id.*  For a right to be clearly established, the "contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987).  A negative answer to either prong means that the government official is entitled to qualified immunity. *Pearson*, 555 U.S. at 236.

If a defendant raises qualified immunity as an affirmative defense, the plaintiff has the burden "of demonstrating that the defendant is not entitled to qualified immunity." *Everson v. Leis*, 556 F.3d 484, 494 (6th Cir. 2009) (citing *Baker v. City of Hamilton*, 471 F.3d 601, 605 (6th Cir. 2006)).  This means the plaintiff must show both that "a constitutional right was violated and that the right was clearly established at the time of the violation." *Chappell v. City of Cleveland*, 585 F.3d 901, 907 (6th Cir. 2009) (citation omitted).

In this case, Plaintiff alleges English and Butler were deliberately indifferent to a serious medical need.  *See* Compl. ¶¶ 45–56, ECF No. 1.

As a preliminary matter, it is unclear whether the Eighth or Fourteenth Amendment applies to Plaintiff's deliberate indifference claim.   Post-trial detainees' deliberate indifference claims are brought under the Eighth

Amendment, and pre-trial detainees' claims are brought under the Fourteenth
Amendment. *See Griffith v. Franklin Cnty., Ky.*, 975 F.3d 554, 566 (6th Cir.
2020) ("The Eighth Amendment's prohibition on cruel and unusual punishment
generally provides the basis to assert a § 1983 claim of deliberate indifference to
serious medical needs, but where that claim is asserted on behalf of a pre-trial
detainee, the Due Process Clause of the Fourteenth Amendment is the proper
starting point." (internal quotation marks and citations omitted)); *see also
Brawner v. Scott Cnty., Tenn.*, 14 F.4th 585, 591 (6th Cir. 2021) (explaining the
differences between Eighth or Fourteenth Amendment deliberate indifference
claims (citing cases)).

Here, Leasure was charged with attempted possession of drug abuse
instruments. Whitlach Dep. 21:22–24, ECF No. 29-3. He had a plea hearing on
June 27, 2019. *Id*. at 23:18–21. It is not clear whether Leasure pleaded guilty at
that hearing. *Id*. at 23:18–13. What is clear is that the judge revoked Leasure's
bond at that hearing because of a failed drug test. *Id*.

If Plaintiff pleaded not guilty, he would have been a pre-trial detainee at the
pertinent time, and his claims would be evaluated under the Fourteenth
Amendment. If he pleaded guilty, and if that plea was accepted, the Eighth
Amendment *might* apply. Some caselaw suggests that it is the conviction (rather
than sentencing) that changes the rubric, but the Court has not found any cases
that expressly so hold. *See, e.g., Trozzi v. Lake Cnty., Ohio*, 29 F.4th 745, 752
(6th Cir. 2022) (discussing the varying treatment of deliberate indifference claims

"brought by pretrial detainees as well as convicted prisoners in this Circuit"
(citation omitted)).

Because it is unclear whether Leasure pleaded guilty, and which standard
applies even if he did plead guilty but was not yet sentenced, the Court will
evaluate his claims under each framework.

As recently clarified by the United States Court of Appeals for the Sixth
Circuit, a pre-trial detainee alleging a Fourteenth Amendment claim of deliberate
indifference to a serious medical need must show:

> (1) the plaintiff had an objectively serious medical need; (2) a
> reasonable officer at the scene (knowing what the particular jail official
> knew at the time of the incident) would have understood that the
> detainee's medical needs subjected the detainee to an excessive risk
> of harm; and (3) the prison official knew that his failure to respond
> would pose a serious risk to the pretrial detainee and ignored that risk.

*Trozzi*, 29 F.4th at 757–58; *see also Greene v. Crawford Cnty., Mich.*, 22 F.4th
593 (6th Cir. 2022); *Brawner*, 14 F.4th 585.

To succeed on an Eighth Amendment claim of deliberate indifference to a
serious medical need, a plaintiff must show:

> First, the underlying deprivation suffered by the prisoner, measured
> objectively, must be sufficiently serious. Second, the prison official's
> omission must be the product of a sufficiently culpable state of mind:
> deliberate indifference. Aligning deliberate indifference with the
> standard for criminal recklessness, *Farmer* held that a prison official
> cannot be found liable unless the official subjectively "knows of and
> disregards an excessive risk to inmate health or safety."

*Trozzi*, 29 F.4th at 752 (internal citations omitted).

This Court recently explained the third *Trozzi* factor as follows:

> [The] third element, the *Trozzi* court reasoned, remains "faithful[]" to *Kingsley*, a decision which itself acknowledged that a jail official's inaction must be "purposeful or knowing"—or, at the very least, criminally reckless. . . . By extension, the *Trozzi* court noted, evidence of a jail official's mere "inaction in the face of an objectively serious medical need [is] insufficient to demonstrate deliberate indifference in violation of the Fourteenth Amendment." [*Trozzi*, 29 F. 4th] at 757. Likewise, it added, an "official who lacks an awareness of the risks of her inaction"—say, for example, "because . . . another official takes responsibility for medical care, a medical professional reasonably advised the official to not act, the official lacked authority to act, etc."— "cannot have violated the detainee's constitutional rights." Id. at 758 (citation omitted).

*Mercer v. Athens Cnty., Ohio*, No. 2:20-CV-3214, 2022 WL 4387431, at *5 (S.D. Ohio Sept. 22, 2022).

The Court considers Plaintiff's § 1983 claims under these frameworks. This inquiry should usually be conducted as to each defendant separately. *See Greene*, 22 F.4th at 608. In this case, however, the claims against the Nurses fail for the same reason, and the parties address the Nurses as a unit, so the Court addresses them together for the sake of efficiency. *See id.* (explaining that the subjective prong should be evaluated for each individual defendant but also addressing an argument common to all defendants at once).

### a. Individual Defendants

The individual-capacity claims against the Nurses fail under either the Eighth or Fourteenth Amendment frameworks. Essentially, Plaintiff argues that the Nurses' failure to transport Leasure to a hospital, or otherwise pursue a more aggressive treatment plan, was deliberate indifference to a serious medical need.

### i.     Fourteenth Amendment

Under the three-prong *Trozzi* test, even assuming Plaintiff could meet her burden for the first and second prongs, her case fails at prong three. That is, Plaintiff does not show that the Nurses "knew that [a] failure to respond [to Leasure's condition] would pose a serious risk to the pretrial detainee and ignored that risk." *Trozzi*, 29 F.4th at 757–58. When a plaintiff does not establish that the official "actually understood the consequences of failing to rush [an ill inmate] to the hospital," her deliberate indifference claim based on that alleged failure cannot succeed. *Mercer*, 2022 WL 4387431, at *7 (internal quotation marks and citations omitted).

First, Plaintiff does not, and could not, argue that the Nurses entirely *failed* to respond because there is ample evidence that they *did* respond to Leasure's complaints. That is, the evidence in the record shows that the Nurses tried to identify the source of Leasure's symptoms, gave him medication to treat the symptoms, and repeatedly checked on him throughout the relevant time period. *See, e.g.*, *Griffith*, 975 F.3d at 577 (concluding that a defendant nurse was not deliberately indifferent where she "took steps to identify the source of [the detainee's] condition and attempted to treat it each time he complained of continuing symptoms"). Instead, Plaintiff argues that the Nurses failed to *properly* respond Leasure's condition and that a proper response would necessarily include more aggressive treatment. Plaintiff must therefore show

that the Nurses knew that a failure to respond more aggressively to Leasure's condition posed a serious risk to him, yet ignored that risk.

The evidence does not support an argument that the Nurses knew that failing to respond more aggressively to Leasure's condition posed a serious risk to him. For example, the portions of the video to which Plaintiff cites show Leasure able to sit, stand, walk, eat, and take medication without assistance. Leasure's ability to perform these tasks independently undercuts any argument that Leasure's condition was so obviously serious that a jury could infer that the Nurses had a subjective understanding of the need for more aggressive treatment. Third, although the cellmate's reports that Leasure was spitting up blood are concerning, Plaintiff points to no evidence establishing that the Nurses knew about these reports during the relevant time frame. *See supra*, 2, n.1. All of this evidence reinforces the conclusions that the Nurses did not appreciate the risks of not treating Leasure's condition more aggressively. *See Trozzi*, 29 F.4th, at 759–60 (concluding that a detainee-plaintiff who presented with stomach pain—that was ultimately a condition requiring surgery—could not show that the jail staff was deliberately indifferent for not treating the situation as an emergency where the staff took the plaintiff's vitals and gave her medication).

None of the evidence to which Plaintiff cites raise any genuine issues of material fact as to the Nurses' subjective knowledge that the failure to provide more aggressive treatment would pose a serious risk to Leasure. First, Plaintiff relies heavily on her expert report (the "Report"). Resp. 10–14, ECF No. 34.

This Report does not offer any conclusions about whether the Nurses actually knew that a failure to treat Leasure's condition more aggressively would pose a serious risk to Leasure. *See generally*, Resp. Ex. G, ECF No. 34. Instead, it offers a conclusory statement that the expert believes that the Nurses "knew or should have known" that Leasure's medical condition required transportation to the hospital. *Id.* at PAGEID # 806. The Report then goes on to detail what the Nurses should have done and how, in the expert's opinion, their conduct violated the standard of care. *Id.* at PAGEID # 806–08.

The Report does not establish the requisite mental state for third prong. Most fundamentally, "knew or should have known" is the standard for negligence. *See Ramsbottom v. Ashton*, No. 3:21-CV-00272, 2022 WL 106733, at *9 (M.D. Tenn. Jan. 11, 2022) ("The phrase 'knew or should have known,' echoes common language used in describing an objective standard of negligence." (internal quotation marks and citations omitted)); *Mercer v. Athens Cnty., Ohio*, No. 2:20-CV-3214, 2022 WL 4387431, at *9 (S.D. Ohio Sept. 22, 2022) ("[T]he Sixth Circuit has made clear, hindsight as to how a jail official *should* have approached a detainee's apparent medical needs carries little weight in the 'deliberate indifference' analysis."(citing *Trozzi*, 29 F.4th at 756)). The Sixth Circuit has explained that "[m]ere negligence is insufficient" to show that an officer was deliberately indifferent to a serious medical need. *Brawner*, 14 F.4th at 596. So, the conclusory statement that the Nurses "knew or should have

known" that Leasure needed emergency treatment does not establish that the Nurses were deliberately indifferent.

The Report's statements about what the Nurses should have done or how their conduct violated the standard of care is likewise unhelpful to Plaintiff. These kinds of opinions cannot establish that the Nurses were actually aware of the risks of not pursuing a more aggressive treatment. *See Howell v. NaphCare, Inc.*, No. 1:19-CV-373, 2021 WL 5083726, at *16 (S.D. Ohio Nov. 2, 2021) (examining, in an Eighth Amendment deliberate indifference case, an expert report that opined on what the defendant nurse "should have" done, and concluding the report did not show the nurse was "subjectively aware of a serious medical risk to [the inmate] that she consciously disregarded"). Once again, although opinions on what the Nurses "should have" done "might constitute evidence of negligence," negligence is not enough for a deliberate indifference claim. *Id.*; *see also Trozzi*, 29 F.4th at 760 (explaining that "even a strong showing that the detainee needed medical attention does not necessarily tell anything about a prison official's state of mind with respect to the need to intervene"). Accordingly, the Report does not create a genuine dispute of material fact as to what risks the Nurses actually appreciated about Leasure's situation.

Next, Plaintiff mentions in passing that Defendant's expert read and discussed a letter from a jail inspector who allegedly found that the Nurses violated two jail policies. Resp. 7–8, ECF No. 34 (citing Fowlkes deposition).

Plaintiff does not provide a copy of this post-investigation letter, nor does Plaintiff specifically point out which policies the Nurses allegedly violated. *Id.* Instead, Plaintiff offers only vague statements that the alleged violation was due to a "failure to provide care" or "perhaps" a failure to send Leasure to a hospital. *Id.*

Without having any details about what policies the Nurses allegedly violated, the Court cannot determine whether such violations have any bearing on the deliberate indifference analysis. Further, "the violation of an internal policy does not establish a constitutional violation." *Griffith v. Franklin Cnty., Ky.*, 975 F.3d 554, 582 (6th Cir. 2020) (citing cases); *see also Howell*, 2021 WL 5083726, at *8 (explaining that "conduct may violate a jail policy without violating the Constitution"). So, to whatever extent Plaintiff argues that the Nurses' alleged policy violations raises an issue of fact as to their knowledge, that argument fails.

Finally, none of the other evidence Plaintiff cites raises an issue of fact as to the Nurses' knowledge. First, Plaintiff argues that the videos of Leasure's treatment "clearly depict a person in significant pain and discomfort requiring emergent medical care." Resp. 13, ECF No. 34. Plaintiff points to the fact that the videos show Leasure "hunched over, fidgety, weak, and just generally in significant discomfort." *Id.* at 10. Plaintiff also argues that the Nurses did not properly investigate the reports that Leasure was spitting up blood. *Id.* at 13. Finally, Plaintiff implies that the lack of video footage from a particular medical visit weighs against summary judgment. *Id.*

None of this evidence establishes that the Nurses subjectively knew that a failure to respond more aggressively to Leasure's condition posed a serious risk to Leasure, and yet ignored that risk. In fact, Plaintiff seems to acknowledge as much when she argues that the Nurses' interactions with Leasure were "devoid of acknowledging his obvious serious condition and taking the necessary steps to address the same." Resp. 13, ECF No. 34. Plaintiff's own observation that the Nurses failed to "acknowledge" the "obvious serious condition" is an apt summary of the problems with Plaintiff's case: even if the Nurses *should* have understood the need for more aggressive treatment, there is no evidence that they *actually did* understand it. *See Griffith*, 975 F.3d at 574 (determining that there was no constitutional violation where a defendant nurse may have "underestimated the severity" of the inmate's condition, but there was no evidence that the nurse "recklessly failed to act with reasonable care to mitigate the risk" (cleaned up)). Plaintiff's failure to establish that the Nurses knew the risks of "ignoring" Plaintiff's condition is fatal to her claims against the Nurses. *See Griffith*, 975 F.3d at 573–74 (explaining that a medical professional's misdiagnosis alone is not a constitutional violation and holding that "the nursing staff did not violate the Constitution by attempting to treat the plaintiff, even though the treatment ultimately was unsuccessful" (citing cases)).

In sum, there is no genuine dispute of material fact that the Nurses did not subjectively understand the risks of failing to pursue a more involved treatment

plan or that the Nurses ignored any such risks. As such, to the extent Plaintiff asserts Fourteenth Amendment claims against the Nurses, those claims fail.

### ii.     Eighth Amendment

The Eighth Amendment deliberate indifference framework requires a plaintiff to show that the official subjectively "knows of and disregards an excessive risk to inmate health or safety." *Trozzi*, 29 F.4th, at 752 (internal quotation marks and citation omitted). As just explained, Plaintiff has failed to show that the Nurses had any subjective understanding of the risks of failing to pursue more aggressive treatment for Leasure. So, Plaintiff has not established the subjective prong of an Eighth Amendment claim, and her Eighth Amendment claims against the Nurses fail. Accordingly, Defendants' motion for summary judgment on the individual-capacity claims against the Nurses is **GRANTED**.

### b.     *Monell* Claims

Plaintiff's *Monell* claims also fail. As Defendant correctly points out, Plaintiff fails to respond to any of Defendants' arguments as to the *Monell* claims. A "plaintiff is deemed to have abandoned a claim when a plaintiff fails to address it in response to a motion for summary judgment." *Briggs v. Univ. of Detroit-Mercy*, 611 F. App'x 865, 870 (6th Cir. 2015) (citing cases). However, even for abandoned claims, a "district court may not use a party's failure to respond (in whole or in part) as a reason for granting summary judgment "without first examining all the materials properly before it under Rule 56(c)." *Id.* (internal quotation marks and citation omitted). Accordingly, the Court will briefly discuss

the various theories under which Plaintiff could assert the *Monell* claims. For the reasons discussed below, the *Monell* claims fail whether Plaintiff pursues them under the Eighth or Fourteenth Amendment.

First, if Plaintiff is attempting to impose § 1983 liability on a theory of *respondeat superior*, such a theory cannot succeed. *See Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) ("Because vicarious liability is inapplicable to *Bivens* and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution.").

To the extent that Plaintiff seeks to impose liability on the County for some policy regarding its treatment of conditions like Plaintiff's, that argument is without merit. Because Plaintiff has not identified which policy is allegedly deficient, the Court is unable to evaluate such a policy's constitutionality. Thus, any argument that the County's policies are unconstitutional is unavailing.

Finally, to the extent Plaintiff is asserting a failure-to-train claim—which is the only theory listed in the Complaint—that claim fails. "In limited circumstances, a local government's decision not to train certain employees about their legal duty to avoid violating citizens' rights may rise to the level of an official government policy for purposes of § 1983." *Connick v. Thompson*, 563 U.S. 51, 61 (2011). However, "[a] municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Id.* (citation omitted). "To satisfy the statute, a municipality's failure to train its employees in a relevant respect must amount to deliberate indifference to the rights of persons

with whom the untrained employees come into contact." *Id.* (internal quotation marks and citation omitted). Thus, under a failure-to-train theory, a plaintiff must show that the training was "inadequate for the tasks the employees were required to perform, the inadequacy resulted from the municipality's deliberate indifference, and the inadequacy actually caused, or is closely related to the plaintiff's injury." *North v. Cuyahoga Cnty.*, 754 F. App'x 380, 386 (6th Cir. 2018) (cleaned up).

Here, Plaintiff has not identified any way in which the County provided inadequate guidance on patient supervision or on when to seek emergency treatment; likewise, Plaintiff has not explained how any such inadequacy resulted from deliberate indifference. Because Plaintiff has not identified how the County was inadequate in its training, Plaintiff is unable to show how such an inadequacy caused Leasure's injuries. Thus, any failure-to-train theory cannot succeed.

Any argument for *Monell* liability is unpersuasive. Accordingly, Defendants' motion for summary judgment as to the *Monell* claims is **GRANTED**.

## B.    State Law Claims

Plaintiff's only remaining claim is her state-law claim for wrongful death. The Court lacks independent subject-matter jurisdiction over that claim and declines to exercise its supplemental jurisdiction over it.

"[A] federal court that has dismissed a plaintiff's federal-law claims should not ordinarily reach the plaintiff's state-law claims." *Rouster v. Cty. of Saginaw*,

749 F.3d 437, 454 (6th Cir. 2014) (internal quotation marks and citations omitted); *see also United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966) ("Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well" (modified by *Rosado v. Wyman*, 397 U.S. 397, 402–04 (1970)). A district court shall "consider and weigh several factors" when determining whether to exercise supplemental jurisdiction, including the "values of judicial economy, convenience, fairness, and comity." *Gamel v. City of Cincinnati*, 625 F.3d 949, 951 (6th Cir. 2010) (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988)). District courts can also consider factors such as: whether the plaintiff engaged in manipulation by dismissing federal claims; whether discovery had been completed; the degree of familiarity the court has with the issues; and if the court had invested significant time in the decision. *Gamel*, 625 F.3d at 952 (citation omitted).

On balance, the Court finds the weight of these factors is against the continued exercise of supplemental jurisdiction. Although discovery has been completed, the other factors weigh against the continued exercise of supplemental jurisdiction over the state-law claim. First, all federal claims have been dismissed, and only state-law claims remain. There is "a strong presumption in favor of dismissing supplemental claims" once the federal claims have been dismissed. *Musson Theatrical, Inc. v. Fed. Exp. Corp.*, 89 F.3d 1244, 1250 (6th Cir. 1996) (citing cases). Second, while the Court may have presided

over this case for almost two years, the Court has relatively little familiarity with it; indeed, this is the first substantive opinion the Court has issued in the case.

These factors taken together weigh against the continued exercise of supplemental jurisdiction.  Accordingly, the Court declines to exercise supplemental jurisdiction over the stand-alone state-law claim.  Accordingly, the wrongful death claim is **DISMISSED WITHOUT PREJUDICE**.

## IV.    CONCLUSION

For these reasons, Defendants' motion for summary judgment is **GRANTED IN PART** and **DENIED IN PART**.  Summary judgment is **GRANTED** as to the federal claims; the state-law claim is **DISMISSED WITHOUT PREJUDICE**.

The Clerk is **DIRECTED** to enter judgment for Defendant on the federal claims and close the case.

**IT IS SO ORDERED.**

**MICHAEL H. WATSON, JUDGE**
**UNITED STATES DISTRICT COURT**